MORGAN, LEWIS & BOCKIUS LLP
MELINDA S. RIECHERT (SBN 65504)
mriechert@morganlewis.com
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306
Tel: 650.843.4000
Fax: 650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
ADELMISE ROSEMÉ WARNER (SBN 215385)
adelmise.warner@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415-442-1000
Fax: 415-442-1001

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER SIEGEL,<br><br>  Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>  Defendant. | Case No. CV 12-03787 HRL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(B)(6) and 56]**<br><br>Date: August 27, 2013<br>Time: 10:00 A.M.<br>Courtroom: 2<br>Judge: Hon. Howard R. Lloyd |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

DB2/ 24294398.1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................1

II. PLAINTIFF DOES NOT NEED FURTHER DISCOVERY AND HAS HAD PLENTY OF TIME TO COMPLETE HIS DISCOVERY...................................................2

III. REPLY TO PLAINTIFF'S RESPONSE TO UNDISPUTED FACTS RELIED ON BY HP ..............................................................................................................................2

    1. Siegel Was An Employee Of EDS Ltd And Then HPES UK............................2

    2. HPES UK And Before It EDS Ltd. Operated Independently From HP, And HP Employees Were Not Involved In The Day To Day Operations Of HPES UK Or EDS Ltd. ..............................................................2

    3. Decisions Regarding Plaintiff's Hiring, Discipline And Termination Were Made By HPES UK, Or By Plaintiff, And Not By HP ...........................3

    4. HPES UK Maintained Its Own Headquarters And Office Space In The UK And Leased Space Under Its Own Name. .....................................................3

    5. Plaintiff Was Paid By HPES UK..........................................................................3

    6. HPES UK Has Its Own Policies. .........................................................................4

    7. No Overlap In Officers and Directors ..................................................................4

    8. Decisions Regarding Plaintiff's Accommodations Were Made By Employees Of HPES UK. ......................................................................................4

    9. Plaintiff's Employment Records Are Located In The UK. ................................5

    10. Plaintiff's Managers Worked For HPES UK In The UK ..................................5

    11. Plaintiff's Email Signature Block Does Indicate That He Was An Employee Of HP Enterprise Services Ltd. ..........................................................5

IV. ARGUMENT..........................................................................................................................5

    A. Summary Judgment Is Proper Because Siegel Cannot Satisfy The Single Employer Test .......................................................................................................5

        1. The Undisputed Facts Demonstrate That There Is No Interrelation of Operations Between HP and HPES UK . ..........................................5

        2. The Undisputed Facts Demonstrate That There Is No Common Management Between HP and HPES UK ............................................7

        3. The Undisputed Facts Demonstrate That HP Did Not Exercise Centralized Control of HPES UK's Labor Relations......................................8

        4. Common Ownership and Financial Control Alone Are Insufficient To Create An Integrated Enterprise ....................................................10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

DB2/ 24294398.1

**TABLE OF CONTENTS**
(continued)

**Page**

B. Applicable Legal Standards Confirm That The ADA Does Not Apply to HP. ..........11

    1. Case Law Which Analyzes The Four-Factor Single Employer Test Confirms That Plaintiff Cannot Hold HP Liable Under The ADA For The Acts Of Its Subsidiary. ....................................................................................11

    2. The Case Upon Which Plaintiff Relies is Inapposite. ....................................13

    3. Piercing the Corporate Veil Analysis is Applicable Here ..............................15

V. CONCLUSION ................................................................................................................15

Morgan, Lewis & Bockius LLP
Attorneys at Law
Palo Alto

DB2/ 24294398.1

ii

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cardinale v. S. Homes of Polk Cnty., Inc.*,
 310 F. App'x. 311 (11th Cir.2009) (per curiam) ................................................................10

*Cook v. Arrowsmith Shelburne, Inc.*,
 69 F.3d 1235 (2d Cir. 1995) ............................................................................................8, 9

*Duncan v. American Intern'l Group, Inc.*,
 2002 WL 31873465 (S.D.N.Y. Dec. 23, 2002) ............................................................12, 13

*Foley Bros., Inc. v. Filardo*,
 336 U.S. 281 (1949) ............................................................................................................11

*Frank v. U.S. West, Inc.*,
 3 F.3d 1357 (10th Cir. 1993) ......................................................................................4, 8, 9

*Johnson v. Flowers Indus., Inc.*,
 814 F.2d 978 (4th Cir. 1987) .........................................................................................6, 15

*LaBouve v. Boeing Co.*,
 387 F. Supp. 2d 845 (N.D. Ill. 2005) ..............................................................................12, 13

*Lusk v. Foxmeyer Health Corp.*,
 129 F.3d 773 (5th Cir. 1997) ..............................................................................................9

*Marzano v. Computer Science Corp., Inc.*,
 91 F.3d 497 (3d Cir. 1996) ................................................................................................15

*Morrison v. Amway Corp.*,
 336 F.Supp.2d 1193 (M.D.Fla. Sept. 17, 2003) ................................................................11

*N.L.R.B. v. Welcome-American Fertilizer Co.*,
 443 F.2d 19 (9th Cir. 1971) ..............................................................................................10

*Nesbit v. Gears Unlim., Inc.*,
 347 F.3d 72 (3d Cir. 2003) ............................................................................................8, 9

*Rogers v. Sugar Tree Prods., Inc.*,
 7 F.3d 577 (7th Cir. 1993) ....................................................................................3, 5, 7, 8

*Sakrete of No. Cal., Inc. And Freight, Constr., Gen. Drivers And Helpers, Local 287*,
 137 N.L.R.B. 1220 (1962) ............................................................................................13, 14

*Swallows v. Barnes & Noble Book Stores, Inc.*,
 128 F.3d 990 (6th Cir. 1997) ..............................................................................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

DB2/ 24294398.1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United Tel. Workers, AFL-CIO v. NLRB*,
   571 F.2d 665 (D.C. Cir. 1978) .................................................................................................10

*Wood v. Southern Bell Tel. & Tel. Co.*,
   725 F.Supp. 1244 (N.D.Ga. 1989) ............................................................................................10

*Zysk v. FFE Minerals USA, Inc.*,
   225 F.Supp.2d 482 (E.D.Pa. 2001) .............................................................................................9

**STATUTES**

42 U.S.C.
   § 12112....................................................................................................................................12
   § 12112 (c)(2)(a) ....................................................................................................................11
   § 12112(c)(2)(C)(ii), (iv) ..........................................................................................................8
   § 12112(c)(2)(C)(iii) .................................................................................................................8

**RULES AND REGULATIONS**

EEOC Compliance Manual, Section 2, III.B.1.a.iii.a..................................................................6, 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

iv

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Even if all of Siegel's statements regarding Hewlett-Packard Company ("HP") and HP Enterprise Services UK Ltd. ("HPES UK") were true, they would still be insufficient to create liability against HP, as the parent of his employer, under the Americans with Disabilities Act. HP is entitled to summary judgment on Siegel's claims because he was never an employee of HP and he has not and cannot show that HP, as the parent of his employer, is liable under US law for the conduct of UK employees of a UK subsidiary in the UK.  Despite admitting that he worked for HPES UK in the UK, where all the claims he is making arose, he chose to sue the parent of his employer under US law for actions that took place solely in the UK, instead of suing his employer in the UK under UK law. This he cannot do.

The ADA does not apply to foreign subsidiaries of US companies unless the four-factor "single employer" test is met.  Plf's Opp. attempts to create disputes of fact by creating a smoke screen of unsupported claims and submitting voluminous documents, without regard for whether they are relevant to meet the elements of the single employer test.  Siegel's arguments suggest that a parent company cannot set any corporate direction, adopt any global policies, or make any decisions which affect its subsidiaries without becoming liable for the actions of its subsidiaries.  This is not the test. The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees absent extraordinary circumstances.

The undisputed facts confirm that HPES UK was operated and managed on a day to day basis by its own management, that HPES UK employees supervised Siegel, and the employees who allegedly discriminated against him were HPES UK employees.  It is undisputed that HPES UK made its own decisions as to hiring, discipline, and termination of its employees without involvement from HP; the headquarters of HPES UK is located in the UK; HPES UK operated its own payroll and maintained its own bank accounts; HPES UK determined bonuses and pay raises for its employees; HPES UK leased office space in the UK under its own name; HPES UK maintained employment policies that were specific to employees in the UK; and there is no overlap in the directors and officers of HPES UK and HP.  Accordingly, HP is entitled to summary judgment on Siegel's claim that it is liable to him under the ADA.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Los Angeles

1

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

DB2/ 24294398.1

## II. PLAINTIFF DOES NOT NEED FURTHER DISCOVERY AND HAS HAD PLENTY OF TIME TO COMPLETE HIS DISCOVERY

HP filed its summary judgment motion on January 2, 2013, over 7 months ago. Plaintiff has been granted repeated extensions of time to respond to the motion so that he can complete the discovery he needs to respond to the Motion. *See* Warner Decls. filed herewith and in Opposition to Plaintiff's Motion for a Continuance filed July 15, 2013 (ECF No. 48). HP even answered 46 Requests for Admissions, and authenticated hundreds of pages of documents **in one week** so that Plaintiff could file his Opposition to the Motion. *Id.* Not only has Plaintiff had more than enough time to conduct whatever discovery he needs, no further discovery is needed.

## III. REPLY TO PLAINTIFF'S RESPONSE TO UNDISPUTED FACTS RELIED ON BY HP

In Pltf's Opp at pages 3-6, Siegel purports to dispute HP's undisputed facts. The evidence he presented does not in fact support the statements made in the Opposition. A review of the evidence confirms that Siegel is not disputing HP's undisputed facts.

### 1. Siegel Was An Employee Of EDS Ltd And Then HPES UK.

While Plaintiff states in his Declaration that he was "employed in the United Kingdom (UK) by HP and assigned to a wholly owned subsidiary of HP" (¶2), he does not dispute that his actual employer was HPES UK and its predecessor EDS Ltd. Ben-Fredj Decl. ¶ 2. Nor does he rebut HP's evidence that HPES UK is a separate corporation. *See* Johnson Decl. His point is only that EDS Ltd. and HPES UK were part of a global organization, which HP does not dispute.

### 2. HPES UK And Before It EDS Ltd. Operated Independently From HP, And HP Employees Were Not Involved In The Day To Day Operations Of HPES UK Or EDS Ltd.

Plaintiff's evidence does not establish the interrelation of operations that is required to hold a parent corporation liable under the ADA to employees of a subsidiary. HP does not dispute that it is a global organization, consisting of a number of different subsidiaries in different locations, including several in the UK, or that HPES UK is a part of that global organization. HP does not dispute that, like other global organizations, it sells products worldwide, to customers worldwide, and that it has teams of employees working together from different parts of the world who work for different subsidiaries to sell its products.

However, the "interrelation of operations" required to hold a parent liable under the ADA for the conduct of its subsidiary focuses on the day-to-day authority exercised by one entity over the other. *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 583 (7th Cir. 1993) (abrogated on other grounds). Plaintiff's evidence, voluminous as it is, does not show that HP was involved in the day to day operations of HPES UK or its predecessor.

### 3. Decisions Regarding Plaintiff's Hiring, Discipline And Termination Were Made By HPES UK, Or By Plaintiff, And Not By HP

Plaintiff does not dispute that his managers worked for HPES UK in the UK. Ben-Fredj Decl. ¶ 4. He does not argue that anyone at HP made any decisions with respect to his hiring, discipline and termination. *Id*. Generalized references to reductions in force following the acquisition of EDS by HP do not prove that HP made any decisions with respect to Plaintiff (who was not laid off) or that HP made decisions as to **which** employees would be laid off.

### 4. HPES UK Maintained Its Own Headquarters And Office Space In The UK And Leased Space Under Its Own Name.

Plaintiff does not dispute that HPES UK maintained its headquarters in the UK, and its own office space in the UK, and leased office space under its own name. Wildish Decl., ¶ 2, Exh. A. Plaintiff only adds that this office space was shared by other UK based HP subsidiaries. He does not claim that HP the parent corporation used any of the office space or that HP in any way controlled, selected, or was responsible for the property.

### 5. Plaintiff Was Paid By HPES UK

It is undisputed that HPES UK operated its own payroll and maintained its own bank accounts (Sales Decl, ¶¶ 2-3, Exhs. A and B), and determined bonuses and pay raises for its employees (*Id.*, ¶ 3). Plaintiff points to the fact that there was a pay cut for all former EDS employees in February 2009, which was later reinstated in May 2009. Ford Decl. Exh. D. However, this does not affect the analysis. It is undisputed that HPES UK determined the actual pay rates and bonuses for its employees. Likewise, the fact that paychecks included the HP logo does not mean that HP played any role in HPES UK's payroll. The return address on the paycheck states that if undelivered, to return it to HPES UK's office on Cain Road.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

3

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

### 6. HPES UK Has Its Own Policies.

Plaintiff does not dispute that HPES UK had specific policies applicable to its UK employees, including a UK/Sickness & Long Term Absence Policy. In support of his argument, Plaintiff points to the "Revision History" at the end of the UK/ Sickness & Long Term Absence Policy, that states "Conversion to HP template and process change." Siegel Decl.¶10 and, Exh. B. However, Plaintiff does not dispute that this is a UK specific policy which in no way applied company-wide, let alone to employees of Hewlett-Packard Company. In fact, it specifies "[t]his policy applies to all employees of Electronic Data Systems Limited[1] and those of any subsidiary or associated company registered in the United Kingdom, except that it does not apply to legacy employees of Hewlett Packard Limited (or any other HP legacy entity) or HP CDS Limited." *Id*.

The fact that HP had some policies, such as a Code of Conduct and global ethics policies, does not make HP liable for the actions of its subsidiary. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1363 (10th Cir. 1993) (such control must rise above mere promulgation of general employment policies, and reach the level of employment decisions affecting employees of the subsidiary.)

### 7. No Overlap In Officers and Directors

Plaintiff does not dispute that there is no overlap between the officers and directors of HPES UK and HP. Rather he points to the fact that some people are directors of more than one HP subsidiary. But the test of when to hold the parent liable is whether there is an overlap between the officers and directors of the parent and the subsidiary. Here, Plaintiff admits that there is not. Nor is it relevant that there were frequent changes and transfers in directors since there was never a transfer between HP and HPES UK. So while the Directors of HPES UK might change from time to time, directors of HP were never directors of HPES UK, or vice versa.

### 8. Decisions Regarding Plaintiff's Accommodations Were Made By Employees Of HPES UK.

Plaintiff does not rebut HP's evidence that all decisions regarding his accommodations were made by employees of HPES UK. Ben-Fredj Decl. ¶5. Plaintiff argues only that his manager asked for help on submitting forms for a work related accident from someone outside of HPES UK, and received answers on processing of forms and links to policies from someone outside of HPES UK.

---

[1] This is the predecessor to HPES UK. Johnson Decl. ¶ 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

4

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

Plaintiff's Declaration and its attached exhibits do not show, as Plaintiff claims, that HR decisions and accommodation decisions were made outside HPES UK.

### 9. Plaintiff's Employment Records Are Located In The UK.

Plaintiff does not dispute that his employment records are located in the UK. He simply questions where the server containing his employment records is located. Plaintiff admitted in his complaint that his employment records were in the UK, and Defendant submitted a declaration confirming this fact (Ben-Fredj Decl. ¶ 3), Plaintiff never asked in discovery where the server containing the employment records was located, and he admits that he doesn't know where it is located. Plaintiff has thus failed to rebut HP's evidence that they are located in the UK.

### 10. Plaintiff's Managers Worked For HPES UK In The UK

Plaintiff does not dispute that his managers, Perry and Waterfield, worked for HPES UK in the UK. He does not rebut HP's evidence that his managers completed his performance reviews. Instead he claims he worked on customer teams with employees from other business entities, and speculates that employees on these teams might have played a role in getting him removed from the teams. However, he submits no admissible evidence in support of his claim.

### 11. Plaintiff's Email Signature Block Does Indicate That He Was An Employee Of HP Enterprise Services Ltd.

Plaintiff claims that the email attached to the Declaration of Ben Fredj does not state he was an employee of HPES UK. Ben-Fredj Decl. ¶ 8, Exh. A. Plaintiff misstates that email. Below the language quoted in Siegel's declaration (¶23) are his mobile number and email address, and then "Hewlett- Packard Enterprise Services Limited" with the Cain Road address.

## IV. ARGUMENT

### A. Summary Judgment Is Proper Because Siegel Cannot Satisfy The Single Employer Test

#### 1. The Undisputed Facts Demonstrate That There Is No Interrelation of Operations Between HP and HPES UK .

The "interrelation of operations" focuses on the day-to-day authority exercised by one entity over the other. *Rogers*, 7 F.3d at 583. This inquiry turns on the sharing of management services, sharing of payroll and insurance programs, sharing use of office space, equipment, and storage, and

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

5

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

operating the entities as a single unit. EEOC Compliance Manual, Section 2, III.B.1.a.iii.a. The Sixth Circuit in *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997) concluded that there was no interrelatedness of operations where the entities each maintained their own records and kept separate bank accounts and offices. *Id.* at 994.

Plaintiff presents no evidence that HPES UK and HP "shared management services, [shared] payroll and insurance programs, [shared] use of office space, equipment, and storage, and [operated] the entities as a single unit." EEOC Compliance Manual, Section 2, III.B.1.a.iii.a. To the contrary, HP's evidence shows that "the entities each maintained their own records and kept separate bank accounts and offices"

HP does not dispute that it is a global organization. Nor does it dispute that its Annual Reports report the number of employees world-wide, including the employees of its subsidiaries, or that its consolidated financial statements include the financials of its subsidiaries. Nor does it dispute that it publishes a Global Citizenship Report detailing its companywide environmental commitments, initiatives and key performance indicators. Nor does HP dispute that it divides its business into business segments, of which the Enterprise Services business is a critical segment and a major source of revenue, and that it sells to large global customers.[2] But none of these facts shows that HP exercises "day-to-day authority" over its subsidiary. If Plaintiff was correct, all global companies would be liable under the ADA. Yet the Courts have held that the doctrine of limited liability creates a strong presumption that the parent company is not the employer of its subsidiary's employees absent extraordinary circumstances. *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980-81 (4th Cir. 1987)

Nor does HP dispute that after the merger between EDS and HP there were significant changes in the overall workforce of the two companies and that a number of employees were made redundant and their positions eliminated. Siegel Decl. ¶9. Nor does HP dispute that "for about two years after the acquisition HP made huge changes in the organization and operation of the former EDS. This included changing job titles, job roles, compensation, benefit plans, policies and procedures to merge the EDS workforce with HP and to establish HP norms in all these areas." Pltf's

---

[2] In his declaration Siegel states "I do not know the exact details of the organization or the exact function of each subsidiary," yet he nonetheless makes speculative and irrelevant assumptions, which lack any foundation, based on his "experience" and what "seems to be created." Siegel Decl. ¶ 16, 17, 18, 23.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

6

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

1   Opp 8:8-12.³ Nor does HP dispute that there was a restructuring after the merger. These are all things
2   that typically happen when two companies merge. But these facts do not mean that HP is liable as
3   Plaintiff's employer, and Plaintiff cites no case law to establish that these facts are relevant for
4   purposes of determining whether an "interrelation of operations," as required to hold a parent
5   corporation liable under the ADA, exists.

6   Nor does HP dispute that other subsidiaries (such as Hewlett Packard Ltd.) provide certain
7   support functions to HP's UK subsidiaries, including HPES UK. But, as shown in HP's Motion, this
8   is not the standard to hold a parent corporation liable under the ADA for the acts of its subsidiary, and
9   Plaintiff cites no cases to suggest that it is. The "interrelation of operations" focuses on the day-to-day
10  authority exercised by one entity over the other. See, *Rogers v. Sugar Tree Prods., Inc*., 7 F.3d 577,
11  583 (7th Cir. 1993).

12  Likewise, the fact that an employee working for one subsidiary might apply for a job at
13  another subsidiary, or that there is an American Express page that all HP employees can log onto,
14  does not make the parent liable under the ADA, since these facts do not mean that HP is exercising
15  day to day control over the operations of its subsidiary.⁴ HPES UK is **not** a shell as Pltf's Opp. at
16  10:2 alleges without citation to the record. As evidenced by the Declarations filed in support of its
17  Motion, HPES UK is validly incorporated, with its own employees, bank accounts, payroll, and real
18  estate leases. Johnson Decl. ¶¶ 2-3; Ben Fredj Decl. ¶ 5; Sales Decl. ¶¶ 2-3, Exhs. A and B; Wildish
19  Decl., ¶ 2, Exh. A.

20          **2.      The Undisputed Facts Demonstrate That There Is No Common
                      Management Between HP and HPES UK**
21

22  Section 12112's second and fourth prongs — "common management" and "common

---

³ Not only is it irrelevant, but Siegel lacks personal knowledge to support his statement that "[a]ll of the former EDS employees… were given new job titles and job descriptions by HP." Siegel Decl. ¶ 33 (emphasis added).
⁴ Pltf's Opp. complains that he had not been able to take depositions of HP witnesses (8:28). However, dates were offered and agreed upon for the witnesses designated by Plaintiff, but he declined to proceed with the depositions. See Warner Decl. Likewise, Plaintiff complains about not getting copies of very confidential customer contracts (9:13-14), even though he knew for months that HP would not provide copies of such contracts because they are not relevant and are confidential, and yet made no effort to compel their production. Likewise Plaintiff never requested the full copy of the Cain Road lease or the name of the lessor. (9:15-17). Plaintiff has known for months that HP would not produce all emails sent to him or by him throughout his employment on the ground that such a request was overbroad, burdensome and irrelevant. Pltf's Opp13-14. Yet, he made no effort to compel HP to produce them.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

7

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

ownership or financial control" – cannot, without more, convert separate entities into an "integrated enterprise." *See*, 42 U.S.C. § 12112(c)(2)(C)(ii), (iv); *Rogers*, 7 F.3d at 583 ("more is needed" than common ownership and management); *Frank*, 3 F.3d 1362. For the common management prong, the EEOC Compliance Manual considers whether the same individuals manage or supervise the entities and whether the entities have common officers and boards of directors. EEOC Compliance Manual, Section 2, III.B.1.a.iii.a.

Siegel has failed to show that an overlap exists in the "common management" between HP and HPES UK. "Plaintiff does not dispute that there were no directors of HP simultaneously serving as directors of HP Enterprise Services UK." Plf's Opp. 5:1-4. He does not refute Defendant's evidence that HP and HPES UK had no common officers. Johnson Decl., ¶ 5, Exhs. C and D. Instead Plaintiff points to announcement emails he received from HP after the merger. Pltf's Opp. 10-12. But these announcements do not show common management between the two companies.[5] Likewise, the fact that Plaintiff worked on customer teams with employees from other HP subsidiaries (Pltf's Opp 10-:18-11:20) does not prove a common management.

### 3. The Undisputed Facts Demonstrate That HP Did Not Exercise Centralized Control of HPES UK's Labor Relations.

Of the four factors under the single employer test, Courts have concluded that the third factor – <u>centralized control of labor relations</u> – is the most important one. *See* 42 U.S.C. § 12112(c)(2)(C)(iii); *Nesbit v. Gears Unlim., Inc.*, 347 F.3d 72, 84 (3d Cir. 2003) ("'courts applying [the single employer] standard in Title VII and related cases have focused on the… centralized control of labor relations'") (citations omitted); *Frank*, 3 F.3d at 1362 (whether parent controls labor relations is an important factor in the four-part single employer test). Thus, the "critical question to be answered is: What entity made the final decisions regarding employment matters relating to the person claiming discrimination?" *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) (internal quotations omitted) (in Title VII suit, court considered which entity hired and fired plaintiff, and whether the parent controlled all major human resources decisions of the subsidiary).[6] "[T]o

---

[5] The Declaration of Karen Ford misstates Exhibit J, which simply announces the completion of the acquisition of EDS by HP, its benefits to customers, and its leadership team going forward. *See* Ford Decl. ¶ 12, Exh, J.
[6] Pltf's Opp. repeatedly and inaccurately states that HP takes the position that the "*only*" pertinent issue in the single employer test is the centralized control of labor relations, and more specifically, the employer of the decision makers. Plf's

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

8

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

satisfy the control prong, [the] parent must control the day-to-day employment decisions of the subsidiary." *Frank*, 3 F.3d 1363. **Such control must rise above mere promulgation of general employment policies,** and reach the level of employment decisions affecting employees of the subsidiary. *Id*. Each of the cases cited by HP in its opening brief addresses the significance of the centralized control of labor relations prong. Motion at 7:13-22. When analyzing the "centralized control of labor relations" courts have looked to the "entity [which] made the final decision regarding the employment matters relating to the person claiming the discrimination." *Nesbit*, 347 F.3d at 84; *Frank*, 3 F.3d at 1362; *Cook*, 69 F.3d 1235. HP does not dispute that it is not the *only* relevant factor, but it is a significant one. Siegel has not rebutted HP's evidence that no one other than HPES UK employees participated in the decisions that form the basis of his Complaint. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 780, fn. 8 (5th Cir. 1997) (relevant control must relate to the actual discriminatory conduct alleged in the litigation); *Zysk v. FFE Minerals USA, Inc.*, 225 F.Supp.2d 482, 496 (E.D.Pa. 2001) (primary inquiry under the single employer test "concerns the parent company's actual role in the alleged discriminatory and retaliatory employment practices."). Siegel's supervisors, Parry and Waterfield, who he alleges acted wrongfully (Compl., ¶¶ 13-14,16, 18-21, 23-25, 28-31, 35, 37-38, 39-42, 44-46, 48-51, 53, 55, 75(j), 55(i); Siegel Decl. ¶¶6, 11(a)), were employees of HPES UK and were located in the UK. Ben Fredj Decl, ¶ 4; Siegel Decl. ¶11(b) and Exh. D (admitting that Parry worked for HP Enterprise Services UK Ltd.). The Human Resources employees, including Ben Fredj, who handled Siegel's injury-related issues and complaints were all employed by HPES UK and located in the U.K. *Id;* Siegel Decl. ¶ 7. One-off emails from personnel at other HP subsidiaries relating in some way to Plaintiff's alleged injuries are irrelevant.[7] It is

---

Opp., 22:17-19, 23:13-14, 23:20-23, 23:26-27, 24:13-14. Defendant's Motion cited case law for the proposition that courts have "focused on the… centralized control of labor relations," have concluded that it is an "important factor," and have stated that the "critical question to be answered is: What entity made the final decision regarding the employment matters relating to the person claiming the discrimination?" Motion, 7:13-8:1. Pltf's Opp. agrees, citing *Sakrete of No. Cal., Inc. And Freight, Constr., Gen. Drivers And Helpers, Local 287*, 137 N.L.R.B. 1220 (1962) that "Board decisions note 'centralized control of labor relations' frequently as a <u>significant determinative factor</u> in determinations regarding the presence of operational integration between separate concerns sufficient to warrant their treatment as a single employer for jurisdictional purposes." Plf's Opp., 17:26-28 (emphasis added).

[7] Siegel's states that he believed Clive Freeman and "other managers outside HP Enterprise Services UK Ltd" were involved in his employment decisions. Siegel Decl. ¶ 11(e). Siegel's "belief" is an incorrect assumption. Freeman was employed by HPES UK. Ben Fredj Reply Decl. ¶ 2. Siegel also mistakenly assumes the actual employer of other employees, including Nick Whalley and Ian Oldfield, based only on their email signature blocks. Siegel Decl. ¶ 11(g)-(h).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

9

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

undisputed that Siegel's claims were handled by, and the relevant decisions were made by, Parry, Waterfield, Guile, and Ben Fredj, as is repeatedly admitted in the Complaint. No employee of HP played any role in making any decisions regarding any accommodations for Siegel. Ben Fredj Decl, ¶ 5.

Siegel does not dispute, and in his Complaint he admits, that "[t]he location where the unlawful employment practices are alleged to have been committed is the UK," that "[t]he events of this action did not arise in the United States," and that "[t]he employment records relevant to Plaintiff's employment are maintained and administered in the UK." Complaint, ¶¶ 4-5. Accordingly, HP and HPES UK do not have centralized labor relations, the most important factor in the single employer analysis.

The fact that there were changes to Plaintiff's title and compensation following the merger between EDS and HP, and that all employees took a pay cut, does not mean that "final decisions regarding employment matters relating to the person claiming discrimination" were made by HP. Similarly, the fact that HP has a public website that anyone interested in working for HP can apply that does not specify the name of the subsidiary does not mean HP is making "final decisions regarding the employment matters relating to the person claiming discrimination."

### 4. Common Ownership and Financial Control Alone Are Insufficient To Create An Integrated Enterprise

Although HP is the ultimate parent of HPES UK this factor alone is insufficient to create an integrated enterprise. *United Tel. Workers, AFL-CIO v. NLRB*, 571 F.2d 665, 667 (D.C. Cir. 1978) (applying single employer factors in NLRA dispute and concluding that "common ownership is not determinative where common control is not shown"); *Wood v. Southern Bell Tel. & Tel. Co.*, 725 F.Supp. 1244, 1249 (N.D.Ga. 1989) ("mere existence of a parent-subsidiary relationship is not enough to impose liability on the parent"); *N.L.R.B. v. Welcome-American Fertilizer Co.*, 443 F.2d 19, 20-21 (9th Cir. 1971) ("No one of these factors is controlling, but emphasis is placed on the first three, as they tend to show operational integration."); *Cardinale v. S. Homes of Polk Cnty., Inc.*, 310 F. App'x. 311, 312–13 (11th Cir.2009) (per curiam) (affirming summary judgment for defendants finding that

---

Contrary to his assumptions, Whalley and Oldfield, and other employees referred to in Plaintiff's declaration, were employed by HPES UK. Ben Fredj Reply Decl. ¶¶ 2-3.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

10

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

defendants were not an integrated enterprise where plaintiff was only able to show one factor--common ownership); *Morrison v. Amway Corp.*, 336 F.Supp.2d 1193, 1200 (M.D.Fla. Sept. 17, 2003) (common ownership "not enough to create a genuine issue of material fact seeing that [the companies] d[id] not have common management, interrelated operations or centralized control of labor operations.").

### B. Applicable Legal Standards Confirm That The ADA Does Not Apply to HP.

It is undisputed that the ADA only applies to HP if Plaintiff is able to establish that the four-factor single employer standard is satisfied. The only remaining question is whether the undisputed material facts rise to this standard. Plaintiff's Opposition includes a "fact" section, and a section addressing the four-factor test, but never *applies* Plaintiff's versions of the facts to the law. Case law clarifies the types of facts which are relevant to this analysis, and Plaintiff's smoke screen of facts does not rise to this level.

#### 1. Case Law Which Analyzes The Four-Factor Single Employer Test Confirms That Plaintiff Cannot Hold HP Liable Under The ADA For The Acts Of Its Subsidiary.

Without citing any authority, Plaintiff's Opposition incorrectly states that "[t]he presumption under 12112 is that the parent company is liable for ADA claims involving the foreign subsidiary." Plf's Opp., 19, fn. 5. To the extent Plaintiff is referring to the statutory language, Plaintiff misreads the clear statutory text which states:

(A) Presumption

<u>If</u> an employer controls a corporation whose place of incorporation is a foreign country, any practice that constitutes discrimination under this section and is engaged in by such corporation shall be presumed to be engaged in by such employer.

42 U.S.C. § 12112 (c)(2)(a) (emphasis added). *Only if* a court concludes that the entities are an integrated enterprise would a presumption arise that the ADA could apply extraterritorially. And in fact, the Supreme Court has addressed the applicability of U.S. labor laws to employers of Americans working abroad, and reaffirmed that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949). Therefore, absent a clear statement of legislative intent, statutes should <u>not</u> be applied outside the U.S. *Id*. at 286.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

11

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

Both parties agree that the four-part single employer test (42 U.S.C. § 12112) applies here and determines whether the ADA applies extraterritorially to HP. The same single employer test applies under Title VII, the ADA, and the NLRB, and case law analyzing the standard in analogous situations is instructive.[8]

Plaintiff argues that cases which apply the single employer test to any situation other than the extraterritorial application of the ADA are irrelevant. Plf's Opp. at 23:2-25:6. However, Plaintiff <u>fails to cite a single case</u> where any court applied the four-part test to the extraterritorial application of the ADA. By contrast, in addition to the many analogous cases applying the four-part test to various situations, HP also cited two cases applying the four-part test in the context of an extraterritorial application - *Duncan v. American Intern'l Group, Inc.*, 2002 WL 31873465 (S.D.N.Y. Dec. 23, 2002) and *LaBouve v. Boeing Co.*, 387 F. Supp. 2d 845 (N.D. Ill. 2005).

In *Duncan*, the court granted summary judgment for the employer and concluded that the ADA and Title VII did not apply to the plaintiff's Bermudan employer where no employee of the American parent company played any part in the decision to fire the plaintiff, and the operations of the holding company and the employer were separate. 2002 WL 31873465. With respect to centralized labor relations, the court explained that the "relevant factors include whether the subsidiary has a separate human resources department, . . . 'establishes its own policies and makes it[s] own decision as to hiring, discipline, and termination of employees. . . .'" *Id.* at *3. Plaintiff's Opposition acknowledges that the *Duncan* court "did state that the employer of the decision maker was crucial." Plf's Opp., 25:17-23.

The plaintiff in *Duncan* put forward the following facts, which were held to be <u>insufficient</u> to make the parent liable:

> [Subsidiary's vice president] has 'fairly regular' contact with employees of [parent] including [the parent's] director who coordinates assignments of international employees; that compensation agreements for [subsidiary's] international employees are drafted by [parent]; that [subsidiary's vice president] used the [parent's] human resources policy manual to formulate [subsidiary's] employee handbook; and that

---

[8] Although Plaintiff argues that "Common law decisions under Title VII and other employment statutes are irrelevant to the instant case," Plaintiff also acknowledges that the legislative history shows that the single employer test was expressly intended to "extend the protections of [Title VII and the ADA] to American citizens working overseas for American employers." Plf's Opp., 20:14-15, 20:5-9. Plaintiff also acknowledges that "[i]n the Ninth circuit it is established that the single employer doctrine under Title VII is identical to the NLRB." Plf's Opp., 22:10-12.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

12

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

> [plaintiff] was allegedly told by her superiors that she was [a parent company] employee and was entitled to [parent's] benefits… Plaintiff also states that she was given a benefits explanation guide entitled "[parent company]–Additional Employee Benefits Package."

*Id*. at *2. Further, in *Duncan* the plaintiff set forth that the "[subsidiary] provides administrative services to two [parent company] subsidiaries," one of the parent company's directors had "management responsibilities at [subsidiary]," "[parent] owns a 20 percent stake in [subsidiary] and that two [of parent's] subsidiaries each own 40 percent of the rest," subsidiary employees could purchase parent company's stock at a discount, "benefits manual may be identical to the [parent's] manual," and that [parent's] counsel defended the [subsidiary's vice president's] deposition." *Id*. at *4. Despite these facts, the court still granted summary judgment in favor of the employer, concluding that the ADA and Title VII did not apply to the subsidiary's parent.

Similarly, in *LaBouve*, the court granted the employer's motion for summary judgment and concluded that an American aircraft maintenance contractor did <u>not</u> control a Saudi Arabian aircraft company for purposes of ADA liability. 387 F. Supp. 2d 845. The court emphasized that "cases focus on the labor relations between the two corporate entities, and in particular, on which entity caused the discriminatory act in question." *Id*. at *851. The court concluded that the American company did not direct the Saudi company to fire the plaintiff, and that the decision to terminate the plaintiff's employment did not originate with the American company. *Id*.

### 2. The Case Upon Which Plaintiff Relies is Inapposite.

Plaintiff's Opposition focuses on *Sakrete of N. Cal., Inc. and Freight, Constr., Gen. Drivers And Helpers, Local 287*, 137 N.L.R.B. 1220 (1962). In *Sakrete*, the NLRB explained that it would only have jurisdiction in the matter if it was shown that the Respondent, Sakrete of Northern California Inc. met the Board's $50,000 inflow-outflow stands for non-retail enterprises. *Id*. at *1221. Since the Respondent alone was unable to reach this standard, the Board considered whether Sakrete, Incorporated could be considered together with Respondent as a "single employer" for jurisdictional purposes. *Id*. at *1222. The Trial Examiner concluded that the entities were *not* an integrated enterprise, but the Board reversed and remanded the case.[9] The facts at issue varied significantly from

---

[9] Plf's Opp. includes almost an entire page of a "quote" which is <u>not</u> from the Board's decision, but from the attached Intermediate Report and Recommended Order by the Trial Examiner (which was reversed and remanded). Plf's Opp. at 17:26-18:21. Not only is that Intermediate Report irrelevant, but it is also misquoted. Plf's Opp. omits entire paragraphs in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

13

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

the facts here:

> The record reveals that Respondent and Sakrete, Incorporated's conduct of business operations are substantially parallel. Both sell the same products, and use special patented equipment supplied by third firm having officers and directors identical with those of Respondent's licensor. Respondent, as licensee, must conform to quality standards set by Sakrete, Incorporated, and may not sell any products not approved by Sakrete, Incorporated. There is no regular interchange of employees between the two, but Sakrete, Incorporated, possesses the right to dispatch a staff member, or some qualified specialist employed by any licensee's firm, to Respondent's plant in order to check its operations, and in order to train or advise Respondent's personnel. Although no central accounting system is employed, and no formal report is made by Respondent to Sakrete, Incorporated, respecting its expenditures and profits, <u>Avril admitted that, as president of Respondent,[10] he presides at all of Respondent's business meetings, makes all major economic decisions, and keeps close watch over Respondent's overall operations. He is the ultimate authority for both companies, whose operating policies and procedures are thus almost identical</u>.
>
> Admittedly, Avril, as president of Sakrete, Incorporated, establishes all of that corporation's policies with regard to wage scales, hours, and conditions of employment, and is responsible for its sales, purchases of supplies, and its hire and discharge of employees. Although it was also admitted that Avril establishes all the general rules with respect to wages, hours, and conditions of work at Respondent's plant, and makes all major decisions with regard to contracts of purchase and sale, there was some dispute among the parties as to who is responsible for the diurnal or "current" business operations. Respondent claims, and the Trial Examiner found, that these decisions have been made by Philip Schneider, Respondent's executive secretary, who has had overall charge of the Milpitas plant.
>
> Although we agree that Schneider was given apparent authority to make local decisions, the record shows that in practice the scope of his decisions has been very narrow. <u>The plant at Milpitas employs only a secretary, a truckdriver, and three production and maintenance employees, and had been operating there for only an approximate 6 months at the time of the hearing. Avril admitted that, as president of Respondent, the right of ultimate authority in all matters resides in him. He has made decisions which were local in nature, such as hiring employees. It was Avril who negotiated by phone with his struck employees at Milpitas. As a matter of fact, Avril stated that Schneider had acted outside his authority when he had "laid off" the employees who went out on strike.</u> In view of these facts, we cannot agree that Avril does nothing more than set general policy for the Milpitas plant, or that Schneider exercises authority in regard to all local matters.

*Id*. at 1222-1223 (emphasis added). Further, "[t]he fact of *common ownership and financial control of Respondent and Sakrete, Incorporated, has been conceded*." *Id*. at 1223 (emphasis added).

Accordingly, the Board concluded that Sakrete of Northern California, Inc. and Sakrete Incorporated could be considered together for jurisdictional purposes. No such facts exist here.

---

its "block quote" without indicating that portions of the Report are omitted.

[10] Mr. Avril also owned the entire capital stock of both Sakrete, Incorporated and Sakrete of Northern California and functioned as president for both entities. *Id*. at 1221.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

14

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL

### 3. Piercing the Corporate Veil Analysis is Applicable Here

Plaintiff acknowledges that "[o]ther courts have looked to the traditional concepts of piercing the corporate veil and the like either as an alternative to or in place of the four part test for single employer." Plf's Opp., 19:8-9, fn 5. Plaintiff argues that this principle is inapplicable because the only standard that applies is the four-part test. However, the fundamental concepts of the single employer test and the piercing the veil test are the same, and focus on when a parent should be liable for the debts of its subsidiaries. As emphasized in *Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 513-14 (3d Cir. 1996), there is a "strong presumption" that a parent is not the employer of its subsidiary's employees. The underlying purpose of the corporate veil doctrine "is to stimulate business investment by permitting individuals to take action in corporate form without the risk of direct liability or involvement." *Johnson*, 814 F.2d at 980 (citations omitted). "[The parent company] retains the benefits of limited liability even if it exercised some control over the subsidiary. If stockholders were liable whenever they exercised their rightful control, limited liability would be a meaningless fiction because few individuals establish a corporation and then ignore it." *Id.* The same core principle applies here.

## V. CONCLUSION

The undisputed facts confirm that Siegel was employed by HPES UK, worked in the UK, and was managed by employees working for HPES UK. The undisputed facts also show that all decisions with respect to Siegel's employment were made by HPES UK employees in the U.K. Accordingly, Siegel's claims against HP for relief under the ADA fail as a matter of law. Defendant respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Siegel's Complaint it its entirety.

Dated: August 13, 2013

MORGAN, LEWIS & BOCKIUS LLP
MELINDA S. RIECHERT
ADELMISE ROSEMÉ WARNER

By   */s/ Adelmise Rosemé Warner*
ADELMISE ROSEMÉ WARNER
Attorneys for Defendant
HEWLETT-PACKARD COMPANY

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/ 24294398.1

15

REPLY ISO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 12-03787 HRL